## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANNA MANNARINO**<br>131 Crawfords Corner Road<br>Holmdel, NJ 07773<br><br>        Plaintiff,<br><br>                v.<br><br>**OCWEN LOAN SERVICING,<br>LLC**<br>c/o Ronald M. Faris, CEO<br>1661 Worthington Road Suite 100<br>West Palm Beach, FL 33409<br><br>        Defendant. | Case No.<br><br>Judge<br><br><br>**COMPLAINT**<br><u>**With Jury Demand**</u> |

Now comes Plaintiff Anna Mannarino, by and through counsel, Dann & Merino, P.C., and for her Complaint against Defendant Ocwen Loan Servicing, LLC states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Anna Mannarino ("Ms. Mannarino", the "Plaintiff", or the "Borrower") is the owner of a home located at 131 Crawfords Corner Road, Holmdel, NJ 07773 (the "Home").

2.     The Plaintiff at all times relevant, has maintained currently maintained the Home as her primary, principal residence.

3.     Defendant Ocwen Loan Servicing, LLC ("Defendant" or "OCWEN") is the servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan") during the time period from at least January 10, 2014 until the present.

4.     OCWEN is doing business in the State of New Jersey as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. §1692a(6).

5.     Defendant is the current servicer of the Loan.

6.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* (RESPA). This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, *et seq.* of Regulation X.

7.    This action also arises out of defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C 1692, et seq. ("FDCPA").

8.    This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

9.    Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Plaintiff reside and the Property is located in New Jersey.

## INTRODUCTION

10.    Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

11.    This case concerns material errors that the Defendant made in processing a loss mitigation application from Ms. Mannarino while at the same time pursuing a foreclosure action against her between November 28, 2016 and the present. Plaintiff was at all times relevant therein in arrears on her mortgage obligation to OCWEN the Loan's servicer.

12.    On January 28, 2015, Deutsche Bank National Association caused a foreclosure action to be filed against the Plaintiff being known as "*Deutsche Bank National Association vs. Mannarino Anna, et al.*," Docket No. 016101-12.  Thereafter, the Plaintiff attempted to secure an affordable loan modification from OCWEN, the details of which efforts give rise to Plaintiff's RESPA and FDCPA claims against OCWEN. In essence, Ms. Mannarino will demonstrate that OCWEN failed to exercise reasonable diligence in reviewing her loss mitigation application in violation of the new federal regulations governing mortgage servicers and the manner in which servicers must process loss mitigation applications prior to and during, forfeiture proceedings. Furthermore, OCWEN failed to timely respond to Ms. Mannarino's Notice of Error in violation of said federal regulations.

13.    At all times relevant herein, Defendant serviced Plaintiff's mortgage Loan and was responsible to process Plaintiff's loss mitigation applications and evaluations for mortgage relief options, all as anticipated by 12 U.S.C. §§ 2601, et seq. and the Regulations promulgated thereunder.

14.    Defendant's actions in this loss mitigation effort did not meet the minimal standards of conduct for mortgage servicers under the newly-enacted Regulation "X" and OCWEN has caused the Plaintiff great financial damage, humiliation, suffering, physical stress and emotional distress, further damage to their credit standing, and forced Plaintiff to incur attorneys' fees, all of which will appear more fully below.

15.    In January 2013, the Consumer Financial Protection Bureau (hereinafter "CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd Frank Act, Public Law No. 111-203, 124 Stat. 1376 (2010).

16.    Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

17.    The Plaintiff's Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1024.2(b).

18.    Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. §1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. §617.700.

19.    Plaintiff is asserting a claim for relief against Defendant for breach of the specific rules under Regulation X as set forth below.

20.    Plaintiff has a private right of action for the claimed breaches under RESPA pursuant to 12 U.S.C. §2605(f) and such actions provide for remedies including recompense for actual damages, statutory damages, and Plaintiff's attorneys' fees.

## OPERATIVE FACTS

21.    Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

22.    On January 28, 2015 Deutsche caused a foreclosure action to be filed against the Plaintiff being known as "*Deutsche Bank National Association vs. Mannarino Anna, et al.*," Docket No. F-016101-12

("Foreclosure Matter").  **A copy of the foreclosure docket is attached hereto as Plaintiff's Exhibit A**.

23.    On or about December 12, 2014, Deutsche obtained a final judgment against Plaintiff in the Foreclosure Matter.

24.    Thereafter, Deutsche caused a sheriff's sale to be scheduled for December 5, 2016 on Ms. Mannarino's Home.  **A copy of the Monmouth County Sheriff's Sale docket is attached hereto as Plaintiff's Exhibit B**.

25.    Thereafter, but before Ms. Mannarino submitted her loss mitigation application (the "Application"), she used her statutory adjournments to stay the sheriff's sale until January 9, 2017.  **See Exhibit B**.

26.    Afterwards, on November 28, 2016, Ms. Mannarino through counsel, submitted a loss mitigation application to OCWEN via e-mail and facsimile (the "Application").  **A copy of the Application cover letter is attached hereto as Plaintiff's Exhibit C**.

27.    Included in the Application was Ms. Mannarino's Profit and Loss Statement for her business from the period of January 1, 2016 to October 31, 2016.

28.    Amongst the loss mitigation programs Ms. Mannarino applied for was the Home Affordable Modification Program ("HAMP").

29.    Pursuant to Making Home Affordable Supplemental Directive 16-02 (the "SD"), the HAMP program was terminating as of December 31, 2016.  **A copy of the Supplemental Directive is attached hereto as Plaintiff's Exhibit D**.

30.    Pursuant to the SD, a Borrower must have submitted an "Initial Package" on or before December 30, 2016 in order to be evaluated for HAMP.  **See Exhibit D**.

31.    Pursuant to the Making Home Affordable Handbook (the "Handbook") Section 4, an Initial Package is defined as:

      i.    RMA Form,
     ii.    Either Form 4506-T or 4506T-EZ,at
   iii.    Evidence of income,
    iv.    Dodd-Frank Certification

**Relevant Excerpt from the Handbook attached hereto as Plaintiff's Exhibit E**.

32.    Ms. Mannarino's Application was at minimum an "Initial Package" as it contained all the information and documents outlined in the Handbook.  **See Exhibit E**.

33.    OCWEN sent Ms. Mannarino correspondence dated November 29, 2016 informing her that "[w]e are unable to offer a Home Affordable Modification because: As of the date of this letter your loan has a confirmed foreclosure sale date within 7 business days" (the "Denial Notice #1").   **A copy of the denial notice is attached hereto as Plaintiff's Exhibit F**.

34.    OCWEN, in an apparent realization that the Application was submitted well more than seven (7) business days before the sale, nonetheless continued reviewing the Application.

35.    OCWEN sent Ms. Mannarino correspondence dated December 9, 2016, confirming receipt of the Application and requesting again the profit and loss statement despite it having been already provided in the initial Application (the "Document Notice").   **A copy of the Document Notice is attached hereto as Plaintiff's Exhibit G**.

36.    Nonetheless, on or around December 28, 2016, Ms. Mannarino submitted via facsimile and USPS Certified Mail to OCWEN the Profit and Loss information requested in Document Notice. **A copy of the facsimile submission is attached hereto as Plaintiff's Exhibit H**.    Ms. Mannarino also submitted the Profit and Loss information to OCWEN via certified mail on December 21, 2016 [Tracking No.: 7011 3500 0003 6771 0735].    According to USPS tracking, OCWEN received the mailing on December 27, 2016.    **A copy of the USPS Tracking is attached hereto as Plaintiff's Exhibit I**.

37.    On January 4, 2017, Ms. Mannarino's counsel spoke with OCWEN representative and Ms. Mannarino's Single Point of Contact Niral.    Niral informed counsel that somehow OCWEN had not yet received the Profit and Loss information despite Ms. Mannarino having sent it via facsimile and USPS Certified Mail.    *See Exhibits H and I*. Niral also informed counsel that OCWEN would not review Ms. Mannarino for HAMP because a complete package was not received by December 30, 2016.

38.    Nonetheless, on January 4, 2017, Ms. Mannarino re-submitted the Profit and Loss Information via e-mail per Niral's request

10

to RMA@OCWEN.com.   **A copy of the e-mail is attached hereto as Plaintiff's Exhibit J**.

39.   On or around January 5, 2017, Ms. Mannarino, though counsel, submitted correspondence captioned "Notice of Error Pursuant to 12 C.F.R. Section 1024.35" (the "NOE #1") to OCWEN via USPS Certified Mail [Tracking No.: 7015 0640 0002 4844 2580].   **A copy of the Notice of Error is attached hereto as Plaintiff's Exhibit K**.

40.   According to USPS Tracking, OCWEN received NOE #1 on January 9, 2017.   **Copy of USPS Tracking attached hereto as Plaintiff's Exhibit L**.

41.   NOE #1 reminded OCWEN that the Profit and Loss Statement had been previously submitted via facsimile on December 28, 2016 and USPS Certified Mail on December 21, 2016.   **See Exhibits, H, I, and K**.   NOE #1 informed OCWEN that they had committed a servicing violation by providing false information regarding not having previously received the Profit and Loss Information.

42.   OCWEN sent Ms. Mannarino correspondence dated January 24, 2017, confirming receipt of NOE #1 and informing her "We have

determined additional time is required to review the details pertaining to your specific request…we are unable to respond within the 30 day anticipated timeline. Under [RESPA], we are afforded an additional 15 days to complete our research and provide a response." (the "NOE #1 Acknowledgment").  **A copy of the acknowledgment is attached hereto as Plaintiff's Exhibit M**.

43.    On or around February 1, 2017, Ms. Mannarino's counsel contacted OCWEN and spoke with a representative who identified himself as Sabarish, Identification No. 11341.    During this conversation, Sabarish first informed counsel that OCWEN still had not received the Profit and Loss Statement.  Counsel told Sabarish that the Profit and Loss Information had already been submitted three times previously: through facsimile, e-mail, and USPS Certified Mail.  **See Exhibits H, I, and J**.

44.    Sabarish then re-reviewed Ms. Mannarino's file and finally confirmed that OCWEN received the Profit and Loss on two previous occasions: On or around December 27, 2016 via certified mail, and on or around December 28, 2016 via facsimile.

45.     Ms. Mannarino, through counsel, submitted correspondence captioned "Notice of Error Pursuant to 1024.35(b) of Regulation X" to OCWEN via US Certified Mail [Tracking No.: 7015 0640 0002 4844 2788] ("NOE #2").  **A copy of NOE #2 is attached hereto as Plaintiff's Exhibit N**.

46.     NOE #2 informed OCWEN that they had committed a servicing violation by falsely claiming to not have received the Profit and Loss Information for over a month and not having reviewed Ms. Mannarino's Application despite having the Profit and Loss Information for over a month.

47.     OCWEN sent Ms. Mannarino correspondence dated February 10, 2017, confirming receipt of NOE #2 and informing her "It is OCWEN's goal to complete all research and provide a written response to you within (10) business days from the date of receipt of your letter…In the event we are unable to issue a complete response within 30 days, you will receive a letter indicating additional time is required." (the "NOE #2 Acknowledgment").  **A copy of the acknowledgment is attached hereto as Plaintiff's Exhibit O**.

48.    Thereafter, OCWEN sent Ms. Mannarino correspondence dated February 9, 2017 informing her that they could not offer her a loan modification under either Tier 1 or Tier 2 of HAMP because "in accordance with MHA guidelines we are unable to review you for the HAMP program as *OCWEN was not in receipt of your Initial Package on or before December 30, 2016*" (the "Denial Notice #2") (emphasis added).   **A copy of the denial notice is attached hereto as Plaintiff's Exhibit P**.

49.    In response to Denial Notice #2, Ms. Mannarino, through counsel, sent OCWEN correspondence captioned "Notice of Error Pursuant to Section 1024.35(b) of Regulation X" (the "NOE #3") via USPS Certified Mail [Tracking No.: 7015 0640 0002 4844 2955].  NOE #3 also provided that it was an appeal of Denial Notice #2.   **A copy of the NOE is attached hereto as Plaintiff's Exhibit Q**.

50.    In NOE #3, Ms. Mannarino referenced the prior NOE's and informed OCWEN again of their error related to falsely claiming to not have received the Profit and Loss information by December 30, 2016.

51.    Despite the fact Ms. Mannarino had submitted what constituted both an Initial package and facially complete loan

14

modification package to OCWEN before December 30, 2016, OCWEN refused to review the Application under HAMP, falsely alleging that the Initial Package was not received on or before December 30, 2016.

52.    OCWEN, through Deutsche, adjourned the sheriff's sale on Ms. Mannarino's home to May 8, 2017.  **See Exhibit B**.

53.    If OCWEN had simply exercised reasonable diligence in obtaining any necessary documents and information for the Application and in reviewing Ms. Mannarino's Application, she would have been well on her way to a modified loan which would have put her on a path to both an improved credit standing and peace in the knowledge that she was not going to lose her house.

54.    Instead, OCWEN'S failure to exercise their duty of reasonable diligence directly and proximately caused the following damages to Ms. Mannarino:

    A. She has had to retain legal counsel to send multiple Notices of Errors to OCWEN.
    B. She is now deprived of the opportunity of submitting a loss mitigation for HAMP as the submission deadline expired on December 30, 2016.
    C. Ms. Mannarino has suffered extreme emotional distress. Because of the failure of Ocwen to review her for the correct loan modification she has lived day to day with the fear that a

court ordered sale of her home of nearly sixteen (16) years might take place, this stress has manifested itself in the following ways:

    a. In December, 2016, Ms. Mannarino was prescribed with both Zantac and Nexium to treat stress-induced reflux. As a result of the stress brought on by OCWEN's conduct, Ms. Mannarino has been forced to continue taking the Zantac and Nexium to treat her reflux.

    b. Ms. Mannarino owns a business which she runs out of her home. Due to OCWEN's conduct in refusing to diligently her Application, Ms. Mannarino is now at risk of being forced to relocate her entire business.

    c. Ms. Mannarino's business reputation continues to be affected as the foreclosure and sheriff's sale filings are public records.

55. At the time of the filing of this Complaint, OCWEN has had more than Ten Thousand Nine Hundred (10,900) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (www.consumerfinance.gov/complaintdatabase/).

## COUNT ONE

## FAILURE TO EXERCISE REASONABLE DILIGENCE IN OBTAINING DOCUMENTS AND INFORMATION TO COMPLETE THE APPLICATION

## VIOLATION OF 12 C.F.R. § 1024.41(b)(1)

56.   Plaintiff restates and incorporates all of the allegations contained in Paragraphs 1 through 55 as if fully rewritten hereinn.

57.   12 C.F.R. 1024.41(a) expressly states that a borrower may "enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

58.   12 C.F.R. § 1024.41(b)(1) provides, in relevant part, that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

59.   Echoing the importance of a servicer's duty to exercise reasonable diligence in obtaining a complete loss mitigation application, the CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the

reasonable diligence obligation in § 1024.41(b)(1).
See § 1024.41(c)(2)(iv) addressing facially
complete applications.

60.   Ms. Mannarino's November 28, 2016 Application contained

the documents and information required to constitute an "Initial

Package" under the MHA Handbook.

61.   In Document Notice, OCWEN requested a copy of the Profit

and Loss Statement which was already submitted as part of the

Application.  **See Exhibit G**.

62.   Nonetheless, Ms. Mannarino submitted requested the Profit

and Loss to OCWEN via facsimile and Certified Mail, and OCWEN

received the Profit and Loss statement before December 30, 2016.  **See**

**Exhibits H and I**.

63.   OCWEN was in possession of an Initial Package before

December 30, 2016.

64.   Despite OCWEN representative Sabarish having confirmed

that OCWEN received all the requested documents on or before

December 30, 2016, OCWEN refused to review Ms. Mannarino under

HAMP, falsely claiming that they were not in receipt of her Initial Package on or before December 30, 2016. **See Exhibits N and O**.

65.    OCWEN's false claim in Denial Notice #2 demonstrates their complete lack of diligence in obtaining missing or incomplete documentation for Ms. Mannarino's Application.

66.    OCWEN's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information to complete Ms. Mannarino's Application as expressly required by 12 C.F.R. §1024.41(b) constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

67.    As a result of OCWEN's failure to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Ms. Mannarino's loss mitigation application, Ms. Mannarino suffered actual damages, including the attorney's fees incurred in preparing the NOE's and the postage cost for mailing the NOE's. Additionally, due to OCWEN's conduct, Ms. Mannarino is now time-barred from applying for HAMP as the deadline expired on December 30, 2016.  Upon information and belief, Ms. Mannarino's Application would have qualified for HAMP and allowed her to save her

house.  Instead, she is now time-barred from applying for HAMP and risks losing her home.

68.    OCWEN's actions are part of a pattern and practice of behavior in violation of Regulation X.

69.    As a result of OCWEN's actions, OCWEN is liable to Ms. Mannarino for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO

## FAILURE TO RESPOND TO NOTICE OF ERROR VIOLATION OF 12 C.F.R. § 1024.35

70.    Plaintiff restates and incorporates all of the allegations contained in Paragraphs 1 through 55 as if fully rewritten herein.

71.    12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a Notice of Error by either

> "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied

upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

72.   12 C.F.R. § 1024.35(e)(3) provides, in relevant part:

   i.   *In general.* A servicer must comply with the requirements of paragraph (e)(1) of this section:

      […]

      (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

      […]

   ii.   *Extension of time limit.* For asserted errors governed by the time limit set forth in paragraph (e)(3)(i)(C) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing. ***A servicer may not extend the time period for responding to errors asserted under paragraph (b)(6), (9), or (10) of this section*** [emphasis added]

73.   On or about January 5, 2017, the Borrower sent NOE #1 to OCWEN, informing them that they committed an error "under 12 C.F.R. Section 1024.45" related to OCWEN providing false information about not having received Ms. Mannarino's Profit and Loss information. **See Exhibit K**.

74.    OCWEN acknowledged NOE #1 through correspondence dated January 24, 2017, indicating the time period to respond to NOE #1 would be extended by fifteen (15) days as permitted under §1024.35(e)(3)(i)(C).

75.    Therefore, on or before February 27, 2017, OCWEN was required, pursuant to 12 C.F.R. § 1024.35(e), to either: (1) Correct the error(s) alleged by and through the NOE and provide the Borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or, (2) conduct a reasonable investigation and provide the Borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason(s) for this determination, a statement of the Borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the Borrowers can request such documents, and contact information, including a telephone number, for further assistance.

76.    As of the date of this Complaint, however, neither the Borrower nor Borrower's counsel have received any written

correspondence consisting of a substantive response to the NOE. Regardless of the form of mailing by and through which OCWEN may have sent any such correspondence, had OCWEN sent such correspondence on or before the statutory deadline of February 27, 2017, either Ms. Mannarino or her counsel would have received such by this point in time.

77.    As such, OCWEN's actions, in failing to send a response to the NOE on or before the statutory deadline of February 27, 2017, constitute a violation of 12 C.F.R. § 1024.35(e). OCWEN's actions in violation of 12 C.F.R. § 1024.35(e) constitute a clear, distinct, and separate error in the servicing of the Borrower's mortgage loan account pursuant to 12 C.F.R. § 1024.35.

78.    As a result of OCWEN's failure to timely respond to NOE #1, Ms. Mannarino suffered actual damages, including the attorney's fees and postage incurred in preparing NOE #3. OCWEN's actions are part of a pattern and practice of behavior in violation of Regulation X.

79.    As a result of OCWEN's actions, OCWEN is liable to Ms. Mannarino for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

80.    Plaintiff restates and incorporates all of the allegations contained in Paragraphs 1 through 55 as if fully rewritten herein.

81.    OCWEN was obligated by contract and common law to act in good faith and to deal fairly with Ms. Mannarino.

82.    The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed-upon expectations of the parties.

83.    OCWEN breached the covenant by misrepresenting to Ms. Mannarino that they did not receive the Initial Package by December 30, 2016.

84.    As a direct and proximate result of OCWEN's breach of their implied covenant of good faith and fair dealing, Ms. Mannarino suffered actual damages, including the attorney's fees incurred in preparing NOE #1 and #2 and the postage cost for mailing NOE #1 and #2. Additionally, due to OCWEN's conduct, Ms. Mannarino is now time-barred from applying for HAMP as the deadline expired on December

30, 2016.  The HAMP program was the best option for Ms. Mannarino to save her home as she does not qualify for any other loan modification programs.

## COUNT FOUR
## VIOLATION OF 15 U.S.C. §1692(d), et seq.

85.   Plaintiff restates and incorporates all of the allegations contained in Paragraphs 1 through 55 as if fully rewritten herein.

86.   A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  (15 USC § 1692(d)).

87.   OCWEN conduct violated 15 U.S.C. § 1692d in that OCWEN engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.  Specifically, OCWEN repeatedly requested the same Profit and Loss Statement despite Ms. Mannarino having submitted it three (3) different times.

88.   As a result of OCWEN'S actions, OCWEN is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 USC § 1692(k).

## COUNT FIVE
## VIOLATION OF 15 U.S.C. §1692(e), et seq.

89.    Plaintiff restates and incorporates all of the allegations contained in Paragraphs 1 through 55 as if fully rewritten herein.

90.    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. (15 USC § 1692(e)).

91.    OCWEN made multiple misrepresentations to Ms. Mannarino that they had never received her profit and loss statement. These misrepresentations were further confirmed when Sabarish re-reviewed Ms. Mannarino's file and realized that OCWEN did in fact receive the Profit and Loss statements on two separate occasions prior to December 30, 2016.

92.    As a result of OCWEN'S actions, OCWEN is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 USC § 1692(k).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff pray that this Court enter its order granting judgment against OCWEN for the following:

A.   For Plaintiff's actual damages, costs, and reasonable attorney fees as to all counts;

B.   For an award of statutory damages of up to Two Thousand Dollars ($2,000.00) as to Count One and Count Two separately;

C.   For an award of statutory damages of One Thousand Dollars ($1,000.00) as to Count Four and Count Five separately; and

D.   Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
DANN & MERINO, P.C.
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
(201) 355-3440
Fax (216) 373-0536
notices@dannlaw.com

**Jury Demand**

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
DANN & MERINO, P.C.