# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA MANNARINO, <br><br> *Plaintiff,* <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC., <br><br> *Defendants.* | Civil Action No: <br> 17-cv-2564 (PGS)(DEA) <br><br> **MEMORANDUM AND ORDER** |

This matter comes before the Court on Defendant Ocwen Loan Servicing, LLC's motion to dismiss Plaintiff Anna Mannarino's Complaint (ECF 6). For the reasons discussed herein, Defendant's motion is denied.

In this action, Plaintiff alleges that Ocwen failed to exercise reasonable diligence in reviewing her loss mitigation application regarding Plaintiff's home mortgage loan, and failed to timely respond to Plaintiff's three Notice of Errors in violation of the Real Estate Settlement Procedures Act (RESPA), and Regulation X. *See* 12 C.F.R. § 1024, *et seq.*

I.

Plaintiff Anna Mannarino owns the property located at 131 Crawfords Corner Road, Holmdel, New Jersey 07773 (hereinafter, the "Property"). (Compl. at ¶ 1; *see* ECF 1). Plaintiff defaulted under the loan and mortgagee and Deutsche Bank National Trust Company ("Deutsche") commenced a Foreclosure Action in the Superior Court of New Jersey on August 13, 2012. (ECF No. 1-1 Ex. A, Foreclosure Docket) (referred to as "Lawsuit 1").

On October 16, 2014, Plaintiff filed a separate suit against Deutsche in the Superior Court of New Jersey, alleging the same defenses and claims asserted in the Foreclosure Action. (ECF 6-

5). Thereafter, Deutsche removed the case to this Court (referred to as "Lawsuit 2"). *See Mannarino v. Deutsche Bank National Trust Company*, et al., 3:14-cv-07771 (MAS-TJB)

In Lawsuit 1, the Final Judgment of Foreclosure was entered against Plaintiff on December 12, 2014. (Id. at ¶ 23).

On September 14, 2015, in Lawsuit 2, the Court granted Deutsche's motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6) with prejudice; and without a right to amend the Complaint. (ECF 6-6).

In Lawsuit 1, Deutsche proceeded to execute on the property and scheduled a sheriff's sale for December 5, 2016 on the Property. (Compl. at ¶ 24; ECF 6-4). Plaintiff stayed the sheriff's sale until January 9, 2017. (Compl. at ¶ 25, ECF 1-3.)

In Lawsuit 1, Ocwen serviced Plaintiff's mortgage loan and was responsible for assessing Mannarino's loss mitigation applications, and other mortgage relief options that were undertaken to avoid a judicial sale of the property. (Compl. at ¶ 3-4).

On April 14, 2017 Plaintiff instituted this suit against Ocwen (referred to as "Lawsuit 3"). Plaintiff alleges that Ocwen is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6). (Compl. at ¶¶ 3-4, 13). Moreover, Plaintiff alleges her note and mortgage is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1024.2(b). (Compl. at ¶ 17). This means that Ocwen must comply with Regulation X and other RESPA provisions. As such, Ocwen did not fall within an exception for "small servicers" (12 C.F.R. §1026.41(e)(4)) or the exemption for a "qualified lender" (12 C.F.R. §617.700). (Compl. at ¶ 18).

The Complaint alleges that the last date to apply for the Home Affordable Modification Program ("HAMP") was December 31, 2016. (Compl. at ¶ 29; ECF 1-4); and a borrower was

required to submit an "Initial Package" on or before December 30, 2016. See, Making Home Affordable Supplemental Directive 16-02. (Compl. at ¶ 30; ECF 1-4). Plaintiff alleges she submitted the documents required of an Initial Package (Loss Mitigation Application), including some additional forms (RMA Form, Form 4506-T or 4506 T-EZ) as evidence of income, and Dodd-Frank certification. (Compl. at ¶ 31; ECF 1-5). Within the Loss Mitigation Application, Plaintiff included a profit and loss statement for her business from the period of January 1, 2016, to October 31, 2016. (Compl. at ¶ 27). On November 28, 2016, Plaintiff submitted a Loss Mitigation Application to Ocwen via email and facsimile. (Compl. at ¶ 26; ECF 1-3).

On November 29, 2016, Defendant sent Plaintiff correspondence informing Plaintiff that Ocwen was "unable to offer a Home Affordable Modification because . . . the confirmed foreclosure sale date was within seven business days," which is an exception to the HAMP program. Despite same, Defendant continued to review the Loss Mitigation Application because it realized that the Loss Mitigation Application was submitted more than seven business days before the foreclosure sale. (Compl. at ¶ 34).

Thereafter, on December 9, 2016, Defendant confirmed receipt of the Loss Mitigation Application and requested that Plaintiff submit a profit and loss statement. (Compl. at ¶ 35; ECF 1-7). Despite the fact that Plaintiff had already submitted a profit and loss statement with her initial Application, on December 21, 2016, Plaintiff re-submitted the profit and loss statement to Ocwen via mail. (Compl. at ¶ 36). Evidently, Defendant received this mailing on December 27, 2016 (*Id.*), and Plaintiff again submitted the Profit and Loss statement to Defendant via facsimile the next day. (Compl. ¶ 36; ECF Nos. 1-8, 1-9).

On January 4, 2017, Plaintiff's attorney spoke with a representative (Niral) of Ocwen. Niral advised Plaintiff's attorney that Ocwen had not received the profit and loss statement; and

Defendant would not review Plaintiff's Loss Mitigation Application because a complete package was not received by December 30, 2016. (Compl. at ¶ 37; ECF Nos. 1-8, 1-9). On the same date, Plaintiff submitted the profit and loss statement to Niral via email. (Compl. at ¶ 38; ECF 1-10).

On January 5, 2017, Plaintiff's counsel filed a First Notice of Error to Defendant via mail, which Defendant received on January 9, 2017. (Compl. ¶ 39-40; ECF Nos. 1-11, 1-12). This Notice informed Defendant that the profit and loss statement was previously submitted to Defendant via facsimile and email and that Defendant had committed a servicing violation by providing false information to Plaintiff regarding the actual date on which the profit and loss statement was received. 12 C.F.R. § 1024.35. (Compl. at ¶ 41; ECF Nos. 1-8, 1-9, 1-11).

On January 24, 2017, Ocwen, confirmed receipt of the First Notice of Error, and informed Plaintiff: "We have determined additional time is required to review the details pertaining to your specific request . . . [if] we are unable to respond within the 30-day anticipated timeline. Under [RESPA], we are afforded an additional 15 days to complete our research and provide a response." (Compl. at ¶ 42; ECF 1-13).

On February 1, 2017, Plaintiff's attorney spoke with a representative (Sabarish) of Ocwen. Sabarish informed Plaintiff's attorney that Defendant had not received the profit and loss statement. (Compl. at ¶ 43; ECF Nos. 1-8, 1-9, 1-10). Plaintiff's attorney refuted Sabarish's representation by advising that the profit and loss statement had been submitted three times through facsimile, email, and mail. *Id.* Later, Sabarish confirmed that Ocwen had received the profit and loss statement on or around December 27 and December 28, 2016. (Compl. at ¶ 44).

Again, Plaintiff's attorney who was concerned about Sabarish's statement decided to submit a Second Notice of Error to Defendant via mail. (Compl. at ¶ 45; ECF 1-14). Within the Second Notice of Error, Plaintiff's counsel asserted that Ocwen had committed a servicing

violation when Sabarish falsely claimed Ocwen had not have received the profit and loss statement, and Plaintiff's counsel alleged a second violation for not reviewing Plaintiff's Application within thirty days as the regulations require. (12 C.F.R. § 1024.35.) *Id.*

Defendant then sent Plaintiff correspondence on February 9, 2017, informing Plaintiff that Defendant could not offer her a loan modification under either Tier 1 or Tier 2 of HAMP because "in accordance with [Making Home Affordable (MHA)] guidelines, we are unable to review you for the HAMP as [Oscwen] was not in receipt of your Initial Package on or before December 30, 2016." (Compl. at ¶ 48; ECF 1-16).

On February 10, 2017, Defendant sent Plaintiff correspondence, confirming receipt of the Second Notice of Error and informing her "It is [Defendant's] goal to complete all research and provide a written response to you within (10) business days from the date of receipt of your letter ... In the event we are unable to issue a complete response within 30 days, you will receive a letter indicating additional time is required." (Compl. at ¶ 47; ECF 1-15).

Thereafter, Plaintiff's counsel filed a Third Notice of Error via mail, concerning the February 9, 2017 loan modification denial. (Compl. ¶ 49; ECF 1-17). In the Third Notice of Error, Plaintiff's counsel referenced the two prior notices of error which informed Ocwen of its misrepresentation regarding the date on which profit and loss statement was received. (12 C.F.R. § 1024.35) (Compl. at ¶ 50-51).

Ocwen adjourned the foreclosure sale on Plaintiff's residence to May 8, 2017 in Lawsuit 1. (Compl. at ¶ 52; ECF 1-2).

II.

As a result of Defendant's failure to exercise reasonable diligence in obtaining any necessary documents and information submitted in support of Plaintiff's Loss Mitigation

5

Application, and its failure to timely review same, Plaintiff alleges she has suffered damages including the opportunity to enter into a loss mitigation transaction and costs. (Compl. at ¶ 52-53). On April 14, 2017, Plaintiff initiated this suit (Lawsuit 3) against Defendant alleging five causes of action. They are:

(1) Violation of 12 C.F.R. §1024.41(b)(1) (Count I);
(2) Violation of 12 C.F.R. §1024.35 (Count II);
(3) Breach of Implied Covenant of Good Faith and Fair Dealing (Count III);
(4) Violation of 15 U.S.C. §1692(d), *et seq.* (Count IV); and
(5) Violation of 15 U.S.C. §1692(e), *et seq.* (Count V).

Defendant seeks dismissal of these claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state viable claims. (ECF 6-1).

On a motion to dismiss for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397-98 (3d Cir. 2000).

III.

Ocwen asserts a number of arguments why it is not obligated to service Mannarino's mortgage. Each argument is discussed below.

A. One of the Ocwen's principal arguments is that Ocwen was not a "servicer" as defined by RESPA of Plaintiff's loan and mortgage at the time of the filing of the Loss Mitigation Application, and therefore it had no obligation to assess it under Regulation X. Ocwen's theory is since the note and mortgage merged into the foreclosure judgment entered in Lawsuit 1 (December 12, 2014) long before Plaintiff's Loss Mitigation Application was received, and as such, the judgment terminates Defendant's servicing obligations *See, Genid v. Fed. Nat'l Mortg. Ass'n & Seterus, Inc.*, 2016 WL 4150455, at *5 (D.N.J. Aug. 2, 2016). (Def.'s Br. at 6; ECF 6-1). This theory relies on New Jersey law, wherein a "mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished . . . As a result, upon entry of a foreclosure judgment, all contractual rights under the mortgage are merged into the foreclosure judgment."). Id. (Def.'s Br. at 11; ECF 6-1). The *Genid* decision discusses the merger theory but the facts presented in this case are different. In *Genid*, the claims occurred subsequent to judgment and subsequent to the foreclosure sale; here the events occurred after judgment, but before the foreclosure sale.

In opposition, Plaintiff distinguishes *Genid* and argues that Defendant was a "servicer" within the meaning of RESPA and Regulation X at the time of the Loss Mitigation Application because no foreclosure sale had occurred. Further, Plaintiff's counsel argues that Regulation X regulates conduct of loan servicers during the loan modification program is pending even after judgment has been entered. (Pl.'s Br. at 13; ECF 11).

In reviewing Regulation X, it has several provisions which broaden the scope of a servicer's obligations until after the judgment is entered. For example, one regulation (12 C.F.R. § 1024.41(g)(1)-(2)) prohibits a servicer from conducting a judicial sale after the "borrower has submitted a complete loss mitigation application," so long as certain conditions are met. In addition, Regulation X broadly defines "servicer" as "a person responsible for servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. § 1024.2. Within that definition, there is no reference to any "merger" theory as defendants counsel asserts.

Plaintiff also maintains that the merger doctrine should not apply due to the facts of the case. Ocwen continued to service Plaintiff's loan, after the judgment was entered. For example, (1) Ocwen continued to communicate with Plaintiff and recognized that Plaintiff retained the right to appeal the foreclosure judgment, (2) Defendant acknowledged that RESPA applied when it extended time to research and respond to Plaintiff's Notices of Error and to assess the Loss Mitigation Information, and 3) Ocwen stated the "communication is from a debt collector attempting to collect a debt." (Pl.'s Br. at 14-15, ECF 11; ECF Nos. 1-13, 1-16).

Since the judicial sale had not occurred, and the cited regulations suggest a servicer has an obligation to the Plaintiff, at least until the judicial sale is completed, Ocwen's "merger" theory lacks merit under the circumstances.

B. Ocwen's second argument is that it had no obligation to evaluate Plaintiff's Loss Mitigation Application filed in November, 2016 for two reasons. First, Ocwen argues that a servicer is only required to evaluate a loss mitigation application once; and here, relying on an assertion in Lawsuit 2, ("Plaintiff had earlier applied to Defendant for loss mitigation and had received a response that she was not eligible for a loan modification because she had already been

8

provided a modification in 2006.") (Def.'s Reply at 4; ECF 12). Accordingly, there is no need to revisit loss mitigation. Secondly, Ocwen argues Plaintiff failed to plead she had previously received a loan modification in this case violates Fed. R. Civ. P. 11. According to Ocwen, it is a violation of Rule 11 to withhold relevant factual evidence within the knowledge of the pleading party in order to gain the advantage of being able to plead more causes of action than are appropriate. *See Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F. Supp. 892, 894-95 (N.D. Ill. 1993). Defendant asserts that Regulation X requires a servicer to complete a single loss mitigation application; and on its face, the November, 2016 application is a second application. More specifically, Regulation X provides in two sections that "[a] servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i) (emphasis added). "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

Plaintiff counters with several arguments. First Plaintiff contends that this Court should not rely on extraneous facts set forth in Lawsuit 2 because the allegation in Lawsuit 2 is not directly on point, and they are not integral to this litigation. See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009). Second, Plaintiff argues by merely relying on Plaintiff's complaint in Lawsuit 2 that there are insufficient facts to determine whether the 2006 application was a "complete application" as required under Regulation X. Third, Plaintiff argues that case law developed on this point has determined that such services must comply with the regulations (12 C.F.R. § 1024.41) at least <u>once</u> after effective date of the regulation (January 10, 2014). (*Bennett v. Bank of*

9

*America, N.A.*, 126 F.Supp.3d 871, 884 (E.D.Ky. 2015); *Schroeder v. Nationstar Mortgage, LLC*, Civil Action No. 161561RAJ (W.D. Wash, June 8, 2017); *Billings v. Seterus, Inc.*, 170 F.Supp.3d 1011 (W.D. Mich. 2016)[1].

The Court agrees with Plaintiff. Obviously, the servicer's obligation to review a complete loss mitigation application emanates from the adoption of Regulation X in 2014. Secondly, to refer back to an application from 2006 makes little sense; because the Plaintiff's financial circumstances may be far different due to the passage of time -- especially considering the ten year period (2006-2016). As such, the Court denies the motion to dismiss on this basis.

C. Ocwen's third argument is that that Plaintiff's application was untimely because the application was filed within 37 days of the scheduled foreclosure sale. 12 CFR § 1024.41(c)(1). In the Complaint, Plaintiff claims that her loss mitigation application was filed approximately 43 days prior to the scheduled foreclosure sale date (January 9, 2017). (See ECF 1-3).

Ocwen argues that the judicial sale was scheduled for December 5, 2016; but Plaintiff contends that under a New Jersey statute she was entitled to an adjournment (which she received) and the judicial sale was moved to January 7, 2017. Here, the judicial sale has not occurred to date. As such, the motion to dismiss on this ground is denied.

D. Ocwen's fourth argument is that Count Two fails because a Notice of Error cannot be used to challenge a denial of a loss mitigation application (citing *Wiggins v. Hudson City Sav. Bank*, No. AP 15-01938 (JKS), 2015 WL 4638452, at *8 (Bankr. D.N.J. Aug. 4, 2015)). (Def.'s Br. at 9-10, ECF 6-1). Within Count II, Plaintiff seeks more than the denial of loss mitigation application, she seeks damages such as attorney's fees and costs; and by

---

[1] Some Courts have held otherwise. *Trionfo v. Bank of Am., N.A.*, 2015 WL 5165415, at *4 (D. Md. Sept. 2, 2015); *Bobbitt v. Wells Fargo Bank, N.A.*, 2015 WL 12777378, at *3 (S.D. Tex. May 7, 2015).

10

inference, seeks that the Loss Mitigation Application process be resumed (i.e. equitable relief). As such, the Plaintiff may proceed on those grounds.

E.   Ocwen's fifth argument is that the breach of the implied covenant of good faith and fair dealing does not apply for several reasons. Ocwen argues that the note and mortgage merged into the judgment, and as such, no contract existed. This argument was decided above (Section A), and I will rely on the same rationale. *Genid v. Fed. Nat'l Mortg. Ass'n & Seterus, Inc.*, 2016 WL 4150455, at *5 (D.N.J. Aug. 2, 2016).

Finally, Ocwen avers that even if this Court finds a contract between the parties, there is no contractual provision in the Note or Mortgage that confers an obligation upon Ocwen to modify a Plaintiff's loan. *Simmons v. Wells Fargo Bank, N.A.*, 2015 WL 4759441 at *4 (D.N.H. Aug. 11, 2015). *Szczodrowski v. Specialized Loan Servicing, LLC*, No. 15-10668, 2015 U.S. Dist. LEXIS 57327, at *5-6 (E.D.Mich. May 1, 2015).

In opposition, Plaintiff argues that Courts have held "If an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the terms of the part of the mortgage loan contract that has been assigned to him.") *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 645 (7th Cir. 2007).

Here, this motion to dismiss Count III is denied. Further discovery is needed to determine (1) whether a contract existed between the parties, (2) whether Defendant was contractually obligated to service Plaintiff's loan through its evaluation of loss mitigation options upon Plaintiff's default; and (3) whether Defendant's alleged misrepresentation of not receiving the Initial Package by the deadline constituted a breach of the contract.

F.   Ocwen argues that the Fair Debt Collection Practices Act (FDCPA) violation should be dismissed. The FDCPA creates a private right of action against debt collectors who fail to

comply with its provisions. 15 U.S.C. § 1692(k). To prevail on a FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

Ocwen argues that it did not harass (§1692(d)), and/or mislead (§1692(c)) Plaintiff in its communications. Defendant claims that Plaintiff and her counsel would not have been misled or harassed by Defendant's alleged misrepresentation that it had not received all the information needed to review the Loss Mitigation Application (citing *Simon v. FIA Card Servs. N.A.*, 2015 U.S. Dist. LEXIS 56960, at *16 (D.N.J. Apr. 30, 2015)). (*See* Compl., ECF 1-13 at ¶ 42, 48 and ECF 1-16). (Def.'s Br. at 15-16). The Third Circuit has analyzed FDCPA claims under the least sophisticated debtor standard. *Brown*, 464 F.3d at 453-54; *Rosenau*, 539 F.3d at 221 (internal quotations and citations omitted). The least sophisticated debtor standard "is lower than the standard of a reasonable debtor" such that "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3rd Cir. 2008) (internal quotations and citations omitted). The least sophisticated debtor standard is a difficult hurdle to overcome on a motion to dismiss. Here, Plaintiff through its well plead complaint has shown sufficient facts that may misled or harassed Plaintiff.

G. Defendant argues that its communications initiated by the Plaintiff, and as such, those communications do not fall within the scope of the FDCPA. G*enid v. Fed. Nat'l Mortg. Ass'n & Seterus, Inc.*, 2016 WL 4150455, at *5 (D.N.J. Aug. 2, 2016)). Here, there are claims of misrepresentation of facts and delay in processing of Plaintiff's Loss Mitigation Application. The

Third Circuit has held that debt collection communications are not "limited to specific requests for repayment" and include communications "conveying information regarding a debt" are subject to the FDCPA. *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citations omitted).

Here, Plaintiff has plausibly set forth a claim. That is, Plaintiff is a consumer, Defendant (Ocwen) is a debt collector. Ocwen's communications about the loss mitigation process constitute debt collecting communications, and arguably, Ocwen misled Plaintiff. This adequately alleges a cause of action.

H.  Ocwen's final argument is that those communications between Plaintiff's attorney and Ocwen are not subject to the FDCPA. (Def.'s Br. at 14; ECF 6-1).

Despite that contention, the Third Circuit has held "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer." *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citations omitted). The Third Circuit has construed the language of the FDCPA broadly in order to give effect to the statute's remedial purpose to protect consumers from abusive debt collection practices. As such, Defendant's motion is denied.

## ORDER

This matter having been opened to the Court by Defendant's motion to dismiss Plaintiff's complaint (ECF 6); and the Court having fully considered the submissions in support thereof, and any opposition thereto; and having considered the arguments of counsel; and for good cause having been shown;

IT IS on this 28th day of March, 2018,

**ORDERED** that Defendant's motion to dismiss (ECF 6) is DENIED.

PETER G. SHERIDAN, U.S.D.J.